## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TERRI TOMLINSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COMBINED UNDERWRITERS  LIFE | ) | |
| INSURANCE COMPANY;   CITIZENS INC; | ) | **Case No. 08-CV-259-TCK-FHM** |
| THE CITIZENS, INC. FINANCIAL GROUP; | ) | **Honorable Terence C. Kern** |
| CITIZENS INSURANCE COMPANY OF | ) | |
| AMERICA; CITIZENS NATIONAL LIFE | ) | |
| INSURANCE COMPANY;   TEXAS | ) | |
| INTERNATIONAL LIFE INSURANCE | ) | |
| COMPANY; and ACTUARIAL | ) | |
| MANAGEMENT RESOURCES, INC., | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS' MOTION FOR CHOICE OF LAW DETERMINATION

COME NOW the Defendants Citizens, Inc. also referred to as The Citizens, Inc. Financial Group ("Citizens"); CICA Life Insurance Company of America f/k/a Citizens Insurance Company of America; and Citizens National Life Insurance Company f/k/a Combined Underwriters Life Insurance Company ("National"), (jointly "Defendants") and move the Court for an order of choice of law determination holding that Plaintiff's derivative liability claims seeking to pierce the corporate veil against Citizens and CICA be governed by the laws of the state of Colorado, the state of incorporation of each of these Defendants, and that Plaintiff's claim to pierce the corporate veil against National be governed by the laws of the state of Texas, the state of incorporation of this Defendant.

### INTRODUCTION

In her Petition, Plaintiff is seeking to disregard the separate corporate existence of each of the Defendants and pierce the corporate veil. *See* Petition, ¶ VIII.  Citizens and CICA are

Colorado corporations and National is a Texas corporation.  A ruling by this Court, as to whether Oklahoma, Colorado or Texas law applies, will assist the parties as they pursue discovery on this claim.  Elements necessary to warrant piercing the corporate veil could vary based on which law is applicable.  A determination of this choice-of-law issue at this stage of the litigation will allow the parties to focus discovery on the elements that will ultimately be applied.   Although Defendants were unable to find any published Oklahoma authority directly on point, almost every other jurisdiction considering the issue has ruled that claims to pierce the corporate veil are governed by the "internal affairs doctrine."   This doctrine applies the law of the state of incorporation and is the rule adopted by the United States Supreme Court and the *Restatement (Second) of Conflict of Laws.*  Based on the following argument and authorities, Defendants seek a determination that Plaintiff's claim to pierce the corporate veil is governed by laws of the state in which each of the Defendants is incorporated.

## STATEMENT OF FACTS

1.      Plaintiff alleges:

[T]hat the relationship among the Defendants is merely a corporate sham and illusion, and one or more of the Defendants is merely the agent, adjunct, and ***alter ego*** of one or more of the remaining Defendants.  By virtue of the overwhelming control exerted over the other entities, ***the separate corporate veils of the entities should be pierced and disregarded for purposes*** of this litigation.  Defendants should be treated as one entity for purposes in this action, and all should be held liable for the contractual obligations and torts of their alter egos.  *See* Petition, ¶ VIII (emphasis added).

2.      As of the date of the events alleged in Plaintiff's Petition, Citizens and CICA were corporations incorporated under the laws of the State of Colorado, each having its corporate headquarters and principal place of business in Austin, Texas; and National is a corporation incorporated under the laws of the State of Texas with its corporate headquarters and principal place of business in Austin, Texas.  *See* Page one of Form 10K for Citizens, attached as Exhibit

A; Page one and two of Annual Statement for CICA, attached as Exhibit B; and Page one and two of Annual Statement for National, attached as Exhibit C.

## ARGUMENT AND AUTHORITIES

**I.      Veil Piercing Law**

The law of veil piercing differs from state to state. Accordingly, the elements that a plaintiff must prove in order to establish a veil piercing claim likewise differ from state to state. Due to the varying nature of veil piercing claims in separate states, a ruling determining the choice of law to apply to Plaintiff's veil piercing claims against each of the Defendants in this case will assist the parties in narrowing discovery to those areas that are relevant. Below is a brief summary of the veil piercing law in Oklahoma, Colorado and Texas.

**A.      Oklahoma**

Under Oklahoma law, the corporate form may be disregarded when one corporation is "an instrumentality or agent of another," and although a number of factors are relevant, the issue "hinges primarily on control." *Frazier v. Bryan Mem'l Hosp. Auth.*, 1989 OK 73, ¶¶ 16-17, 775 P.2d 281, 288. The *Frazier* court lists ten elements to be considered when determining whether the corporate veil should be pierced. A finding of fraud is not included in this list and, the Oklahoma court of Civil Appeals noted "[a]lthough several cases have discussed fraud as a potential basis for ignoring formal corporate identity, it is not necessary for fraudulent intent to be present for the alter ego theory to be applied to pierce the corporate veil." *Pennmark Resources Co. v. State ex rel. Oklahoma Corp. Comm'n*, 2000 OK CIV APP 63, ¶ 17, 6 P.3d 1076, 1018.

**B.      Colorado**

Under Colorado law, veil piercing "is appropriate when the corporation is merely the alter ego of the shareholder, and the corporate structure is used to perpetuate a wrong. *In re*

*Phillips*, 139 P.3d 639, 643 (Colo. 2006) (citations omitted).   Only in such extraordinary circumstances, may a court ignore the independent existence of the business entity and pierce the corporate veil to achieve an equitable result. *Id.* (citations omitted).

To determine whether piercing the corporate veil is appropriate, the courts in Colorado make three separate inquiries.  First, the court must inquire into whether the corporate entity is the alter ego of the shareholder or owner.  An alter ego relationship exists when the corporation is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." *Id.* (citing *Krystkowiak v. W.O. Brisben Co., Inc.*, 90 P.3d 859, 867 n. 7 (Colo. 2004)).

In establishing whether such unity of interest exists as to disregard the corporate veil, courts in Colorado consider a variety of factors, including  whether "(1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes." *Id.* (citing *Leonard v. McMorris,* 63 P.3d 323, 330 (Colo. 2003) and *Newport Steel Corp. v. Thompson*, 757 F.Supp. 1152, 1156 (D. Colo. 1990)).

Second, a court must determine whether "justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was used to perpetrate a fraud or defeat a rightful claim." *Id.* (quoting *Contractors Heating & Supply Co. v. Scherb,* 432 P.2d 237, 239 (Colo. 1967)).  "Only when the corporate form was used to shield a dominant shareholder's improprieties may the veil be pierced."

- 4 -

Third and finally, the court "must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity." *Id.* (citing *Water, Waste & Land, Inc. v. Lanham,* 955 P.2d 997, 1004 (Colo. 1998). "Achieving an equitable result is the paramount goal of traditional piercing of the corporate veil. A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met." *Id.* (citing *Contractors Heating & Supply Co.,* 432 P.2d at 239).

### C.    Texas

Section 21.223 of the Texas Business Organizations Code specifically addresses the assertion of veil-piercing theories to Texas corporations.  The statute provides as follows:

(a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber of the corporation, may not be held liable to the corporation or its obligees with respect to:

(1) the shares, other than the obligation to pay to the corporation the full amount of consideration, fixed in compliance with Sections 21.157-21.162, for which the shares were or are to be issued;

(2) *any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory*; or

(3) any obligation of the corporation on the basis of the failure of the corporation to observe any corporate formality, including the failure to:

(A) comply with this code or the articles of incorporation or bylaws of the corporation; or

(B) observe any requirement prescribed by this code or the articles of incorporation or bylaws of the corporation for acts to be taken by the corporation or its directors or shareholders.

(b) *Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for*

> ***the purpose of perpetrating and did perpetrate an actual fraud on the obligee
> primarily for the direct personal benefit of the holder, beneficial owner,
> subscriber, or affiliate.***

TEX. BUS. ORG. CODE ANN. § 21.223 (Vernon 2006) (emphasis added).

The Texas Supreme Court in *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986)

summarized Texas law on veil piercing as follows:

> We disregard the corporate fiction, even though corporate formalities have been
> observed and corporate and individual property have been kept separately, when
> the corporate form has been used as part of a basically unfair device to achieve an
> inequitable result.
>
> Specifically, we disregard the corporate fiction:
>
> (1) when the fiction is used as a means of perpetrating fraud;
>
> (2) where a corporation is organized and operated as a mere tool or business
> conduit of another corporation;
>
> (3) where the corporate fiction is resorted to as a means of evading an existing
> legal obligation;
>
> (4) where the corporate fiction is employed to achieve or perpetrate monopoly;
>
> (5) where the corporate fiction is used to circumvent a statute; and
>
> (6) where the corporate fiction is relied upon as a protection of crime or to justify
> wrong.

*Id.* at 271-72 (citations and footnotes omitted).   In a footnote immediately following these listed

six theories of veil piercing, the Texas Supreme Court added a seventh ground for veil piercing,

stating that "inadequate capitalization is another basis for disregarding the corporate fiction." *Id.*

at 272 n. 3.

## II.     The Internal Affairs Doctrine

In *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 91 (1987), the United States

Supreme Court stated that it is "an accepted part of the business landscape in this country for

States to create corporations, to prescribe their powers, and to define the rights that are acquired

by purchasing their shares." In *CTS*, it was also recognized that "[a] State has an interest in promoting stable relationships among parties involved in the corporations it charters, as well as in ensuring that investors in such corporations have an effective voice in corporate affairs." *Id.* The internal affairs doctrine is a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs – the state of incorporation. *McDermott Inc. v. Lewis*, 531 A.2d 206 (Del. 1987); *accord State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434, 442 (Cal. App. 2d 2003)(citing *Edgar v. MITE Corp.*, 457 US 624, 645 (1982)).

The "internal affairs doctrine" is a judge-made choice of law canon which mandates that the laws of the state of incorporation be applied when disputes arise from "activities concerning the relationships inter se of the corporation, its directors, officers and shareholders." Harvard Law Review Assoc., *The Internal Affairs Doctrine: Theoretical Justifications and Tentative Explanations for its Continued Primacy*, 115 Harv. L. Rev. 1480 (2002).

The internal affairs doctrine developed on the premise that, in order to prevent corporations from being subjected to inconsistent legal standards, the authority to regulate a corporation's internal affairs should not rest with multiple jurisdictions. *See Edgar v. Mite Corp.*, 457 U.S. at 645. It is now well established that only the law of the state of incorporation governs and determines issues relating to a corporation's internal affairs. *See CTS Corp.*, 481 U.S. at 89-93. By providing certainty and predictability, the internal affairs doctrine protects the justified expectations of the parties with interests in the corporation. *Id.*

The internal affairs doctrine applies to those matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders. *McDermott Inc. v. Lewis*, 531 A.2d at 214. The *Restatement (Second) of Conflict of Laws* § 301 provides: "application of the local law of the state of incorporation will usually be supported by those

choice-of-law factors favoring the need of the interstate and international systems, certainty, predictability and uniformity of result, protection of the justified expectations of the parties and ease in the application of the law to be applied." *Restatement (Second) of Conflict of Laws* § 301 (1971); *see also Restatement (Second) of Conflict of Laws* § 303 cmt. d (stressing importance of uniform treatment of shareholders). Accordingly, the conflicts practice of both state and federal courts has consistently been to apply the law of the state of incorporation to "the entire gamut of internal corporate affairs." *McDermott Inc. v. Lewis*, 531 A.2d at 216.

The internal affairs doctrine is not, however, only a conflicts of law principle. Pursuant to the Fourteenth Amendment Due Process Clause, directors and officers of corporations "have a significant right . . . to know what law will be applied to their actions" and "[s]tockholders . . . have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs." *Id.* at 216-217. Under the Commerce Clause, a state "has no interest in regulating the internal affairs of foreign corporations." *Id.* (quoting *Edgar*, 457 U.S. at 645-46). Therefore, this court has held that an "application of the internal affairs doctrine is mandated by constitutional principles, except in the 'rarest situations;'" *Id.* (quoting *CTS Corp.*, 481 U.S. at 90) *e.g.,* when "the law of the state of incorporation is inconsistent with a national policy on foreign or interstate commerce." *Id.*

Specifically with regard veil piercing, "[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41, at 561 n. 4 (rev. perm. ed. 1999). The *Restatement (Second) of Conflict of Laws* has also adopted this rule, stating: "The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation . . . and to its creditors for corporate debts." *Restatement (Second) of Conflict of Laws* § 307 (1971).

- 8 -

### III.    Justification for the Internal Affairs Doctrine

"This principle . . . is based on the rationale that such 'internal' matters should be subject to a single, uniform, and predictable law, and that the state of incorporation has the most significant relationship to the issues."  Janet Cooper Alexander, *Unlimited Shareholder Liability Through a Procedural Lens*, 106 Harv. L. Rev. 387, 410 (1992).  Justification for this rule stems from the "need for uniform law governing the structural relationships of corporations that act in numerous states.  To permit each state to impose unlimited shareholder liability through its tort law would make uniformity impossible, and would thus defeat an important principle of the substantive law of corporations."  *Id.*  at 413.  The Supreme Court of the United States of America has adopted the internal affairs doctrine and enunciated the rationale for this rule of law declaring:

> Every State in this country has enacted laws regulating corporate governance. . . . Large corporations that are listed on national exchanges, or even regional exchanges, will have shareholders in many States and shares that are traded frequently.  The markets that facilitate this national and international participation in ownership of corporations are essential for providing capital not only for new enterprises but also for established companies that need to expand their businesses.  This beneficial free market system depends at its core upon the fact that a corporation – except in the rarest situations – is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation.

*CTS Corp.*, 481 U.S. at 89-90.

As one commenter has stated:

> Under the prevailing conflicts practice, . . . [courts] have consistently applied the law of the state of incorporation to the entire gamut of internal corporate affairs. In many cases, this is a wise, practical, and equitable choice.  It serves the vital need for a single, constant and equal law to avoid the fragmentation of continuing, interdependent internal relationships. . . . It validates the autonomy of the parties in a subject where the underlying policy of the law is enabling.  It facilitates planning and enhances predictability. . . . [A]pplying local internal affairs law to a foreign corporation just because it is amenable to process in the forum or because it has some local shareholders or some other local contact is apt to produce inequalities, intolerable confusion, and uncertainty, and intrude into the domain of other states that have a superior claim to regulate the same subject matter.

P. John Kozyris, *Corporate Wars and Choice of Law*, 1985 Duke L. J. 1, 98.

In *Kamen v. Kemper Fin. Serv.*, 500 U.S. 90 (1991), the United States Supreme Court reaffirmed its commitment to the need for stability that is afforded by the internal affairs doctrine.   In *Kamen*, the issue was whether the federal courts could superimpose a universal-demand rule upon the corporate doctrine of all states.     The United States Supreme Court held that a federal court universal-demand rule would cause disruption to the *internal affairs* of corporations and that its holding in *Burks v. Lasker*, 441 U.S. 471 (1979) had counseled "against establishing competing federal – and state – law principles on the allocation of managerial prerogatives within [a] corporation."   *Kamen*, 500 U.S. at 106. In *Kamen*, the *Restatement (Second) of Conflict of Laws* was cited for the proposition that "[u]niform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law." *Id.* (quoting *Restatement (Second) of Conflict of Laws* § 302, cmt. e, p. 309 (1971)).

With regard to veil piercing, the *Restatement (Second) Conflicts of Laws* provides the rationale for the rule that only the law of the state of incorporation applies to veil piercing claims. "Unlike some other sections of the *Restatement* that deal with the internal governance of the corporation, § 307 calls for the exclusive application of the law of the state of incorporation. *No other state's law may be applied, even if that state is found to have a more significant interest.*" *Id.* at 410 n. 119 (emphasis added).   The comment section of § 307 sets forth the reasoning behind this rule:

(1)     this is the law which the shareholders, to the extent that they thought about the questions, would usually expect to have applied to determine their liability,

(2)     exclusive application of this law will assure uniform treatment of shareholders or of classes of shareholders and

(3)    this state will usually have the dominant interest in the determination of this issue.

*Restatement (Second) of Conflict of Laws* § 307 cmt. a (1971).  "The state of incorporation has the greater interest in determining when and if the corporate veil is to be pierced."  1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.90, at 697; *see also Soviet Pan Am Travel Effort & Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991) ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.")

**IV.    The Internal Affairs Doctrine is a Widely Accepted Principle of Corporate Law**

The internal affairs "doctrine is widely accepted and has become enshrined in the Revised Model Business Corporation Act as a statutory choice of law rule."  William J. Carney, *The Political Economy of Competition for Corporate Charters*, 26 J. Legal Stud. 303, 314 (1997).  The Model Act provides that it "does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state."  Model Business corporation Act § 15.05(c) (1984).  The official comment elaborates that this provision "preserves the judicially developed doctrine that internal corporate affairs are governed by the state of incorporation even when the corporate business and assets are located primarily in other states."  Id. § 15.05(c) official cmt.

In *McDermott*, the Court held that the "internal affairs doctrine is a major tenet of Delaware corporation law having important federal constitutional underpinnings."  *McDermott Inc. v. Lewis*, 531 A.2d 206, 209 (Del. 1987).  In *CTS*, the Supreme Court held that the Commerce Clause "prohibits States from regulating subjects that 'are in their nature national, or admit only of one uniform system, or plan of regulation,'" and acknowledged that the internal

affairs of a corporation are subjects that require one uniform system of regulation. *CTS Corp.,*

481 U.S. at 89 (quoting *Cooley v. Bd. of Wardens*, 53 U.S. 299, 319 (1851)).

**V.     The Court Should Follow the Widely Accepted Internal Affairs Doctrine With Regard to Plaintiff's Piercing the Corporate Veil Claim**

As set forth by one court, "most, if not all, jurisdictions have adopted the *Restatement*

position, and use the 'internal affairs doctrine' as their choice of law for piercing the corporate

veil." *Dassault Falcon Jet Corp. v. Oberflex, Inc.*, 909 F. Supp. 345, 359 (M.D.N.C. 1995).

While it appears Oklahoma's district courts have not dealt with a case directly addressing

the issue of what law to apply in cases involving claims to pierce the corporate veil, the law of

the state of incorporation is the choice of most jurisdictions. *See e.g., In re Cambridge Biotech*

*Corp.*, 186 F.3d 1356, 1376 n. 11 (Fed. Cir. 1999) ("When a court considers disregarding the

corporate entity, *i.e.,* "piercing the corporate veil," the court applies the law of the state of

incorporation."); *Stromber Metal Works, Inc. v. Press Mech., Inc.,* 77 F.3d 928, 933 (7th Cir.

1996) ("Efforts to pierce the corporate veil are governed by the law of the state of

incorporation."); *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("The

law of the state of incorporation determines when the corporate form will be disregarded and

liability will be imposed on shareholders."); *In re Bridge Info. Sys., Inc.*, 325 B.R. 824, 830-31

(E.D. Mo. Bankr. 2005)(courts apply the "internal affairs" doctrine regarding requests to pierce

the corporate veil, because such requests necessarily involve "an analysis of how the controlling

shareholders administered and governed the corporation."); *Autrey v. 22 Texas Services, Inc.*, 79

F. Supp. 2d 735 (S.D. Tex. 2000)(Pennsylvania's law applied, being the state of incorporation);

*Maltz v. Union Carbide Chems. & Plastics Co., Inc.*, 992 F. Supp. 286, 300 n. 12 (S.D.N.Y.

1998) ("I reach this conclusion having applied New York alter ego law . . . because New York is

the state of incorporation."); *Amoco Chemical Co. v. Tex Tin Corp.*, 925 F. Supp. 1192, 1201

(S.D. Tex. 1996) ("This Court looks to the law of the State of Incorporation for each corporate

Defendant to determine whether its corporate entity should be disregarded."); *Resolution Trust Corp. v. Latham & Watkins*, 909 F. Supp. 923, 935 (S.D.N.Y. 1995) (finding that Delaware law applies in a suit to pierce the corporate veil based on *Restatement (Second) of Conflict of Laws* § 307); *In re Blanton*, 105 B.R. 811 (Bankr. W.D. Tex. 1989) (finding that the law of Texas applies based on the argument that this is the state of incorporation); *Kempe v. Ocean Drilling & Exploration Co.*, 683 F. Supp. 1064, 1072 (E.D. La. 1988) (finding that Louisiana would apply the law of the state of incorporation to a veil piercing claim).

Significantly, Oklahoma has followed the approach of *Restatement (Second) of Conflict of Laws* on other issues and should do so on this issue as well.  Specifically, the following Oklahoma courts have positively regarded certain portions of the *Restatement (Second) of Conflict of Laws* including but not limited to the following:  the court in *Edwards v. McKee*, 2003 OK CIV APP 59, ¶ 11, 76 P. 3d 73 applying *Restatement (Second) of Conflict of Laws* §§ 6, 145 and 146; *Gullo v. Gullo*, 2003 OK CIV APP 61, ¶ 16, 74 P.3d 612 recognizing the "effects test" set out in *Restatement (Second) of Conflict of Laws* § 37; the court in *Beard v. Viene*, 1992 OK 28, ¶ 6, 826 P.2d 990, 995 acknowledging the well-settled rule of law in *Restatement (Second) of Conflict of Laws* § 100.

## CONCLUSION

Accordingly, based on the arguments and authorities presented herein, the Court should hold that the law of the state of incorporation of the Defendants governs the determination of whether the corporate veil should be pierced.

WHEREFORE, premises considered, Defendants move the Court for a ruling that Plaintiff's claim to pierce the corporate veil against Citizens and CICA be governed by the laws of the state of Colorado, the state of incorporation of each of these Defendants, and that Plaintiff's claim to pierce the corporate veil against National be governed by the laws of the state of Texas, the state of incorporation of this Defendant.

Dated:  August 15, 2008                Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**

By:     **s/Margaret M. Clarke**
        Margaret M. Clarke, OBA No.16952
        Heather L. Cupp, OBA No. 17609
        Karissa K. Cottom, OBA No. 20126
        320 South Boston Avenue, Suite 200
        Tulsa, Oklahoma 74103-3708
        Telephone:  (918) 594-0400
        Facsimile:  (918) 594-0505
        Email:  mclarke@hallestill.com
                hcupp@hallestill.com
                kcottom@hallestill.com

        and

**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
Linda M. Szuhy, OBA No. 17905
700 N. Pearl Street, 25th Floor
Dallas, Texas  75201
Telephone:  (214) 871-8200
Facsimile:  (214) 871-8209
Email:  lszuhy@thompsoncoe.com

**ATTORNEYS FOR DEFENDANTS**

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on the 15th day of August, 2008, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Eric J. Begin | Damon E. Sacra |
| McGivern, Gilliard & Curthoys | McGivern, Gilliard & Curthoys |
| 1515 S. Boulder Avenue | 1515 S. Boulder Avenue |
| P.O. Box 2619 | P.O. Box 2619 |
| Tulsa, Oklahoma  74101-2619 | Tulsa, Oklahoma  74101-2619 |
| ebegin@mcgivernlaw.com | dsacra@mcgivernlaw.com |

                    s/Margaret M. Clarke
                    Margaret M. Clarke

895690.1:232022:02050

- 15 -