**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TERRI TOMLINSON, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | No. 08-CV-259-TCK (FHM) |
| ) | |
| COMBINED UNDERWRITERS LIFE ) | |
| INSURANCE COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is the Motion for Summary Judgment (Doc. 82) filed by Defendants Citizens, Inc. ("Citizens"), Citizens Insurance Company of America ("CICA"), and Citizens National Life Insurance Company ("National").

**I.  Background**

This matter involves a dispute concerning claims submitted by and benefits payable to Plaintiff Terri Tomlinson ("Plaintiff") under a Cancer and Dread Disease Insurance Policy ("the Policy"). In 1991, Combined Underwriters Life Insurance Company ("Combined Underwriters") issued the Policy, under which Plaintiff was also an insured. Citizens purchased Combined Underwriters in 2002, and gave the stock of Combined Underwriters to CICA, a subsidiary of Citizens. CICA designated Combined Underwriters to be its subsidiary and changed Combined Underwriters' name to National in 2004. National and Texas International Life Insurance Company ("TILIC") entered into a "Coinsurance Reinsurance Agreement" in December of 2004 whereby TILIC assumed the role of a co-insurer and reinsurer for a group of insurance policies that included the Policy at issue here. Austin Insurance Management, Inc. ("AIM") is the parent corporation of TILIC.

Plaintiff's remaining claims are for breach of contract and bad faith.[1] Her attempt to impose liability against all of the defendants, including the parent corporations of Combined Underwriters and TILIC, is found in the following paragraph of the Amended Complaint:

> Plaintiff alleges that the relationship among the Defendants is merely a corporate sham and illusion, and one or more of the Defendants is merely the agent, adjunct, and alter ego of one or more of the remaining Defendants. By virtue of the overwhelming control exerted over the other entities, the separate corporate veils of the entities should be pierced and disregarded for purposes of this litigation. Defendants should be treated as one entity for purposes of liability in this action, and all should be held liable for the contractual obligations and torts of their alter egos.

(Doc. 161, at 2.) The Court granted the Motion for Choice of Law Determination (Doc. 31) filed by Citizens, CICA and National (referenced collectively herein as "Defendants" even though AIM and TILIC are not parties to the motion),[2] and found that the law of each Defendant's state of incorporation applies to issues of piercing the corporate veil. Citizens and CICA are incorporated in Colorado; National is incorporated in Texas. (See Order, Doc. 198.)

Defendants argue that Citizens and CICA are not parties to the Policy and are not responsible for claims made under the Policy. They maintain that the corporate structures of Citizens, CICA and National are not fraudulent or contrary to public interest. They claim that they have scrupulously followed all corporate formalities required by law and by their own governing documents. They also state that their structure and operations are compliant with all applicable insurance regulations. Further, Defendants assert that each entity has always maintained the amount of capitalization required by the applicable insurance laws. According to Defendants, they observe corporate

---

[1] The Court denied Defendants' motion for summary judgment on these claims. (See Order, filed April 9, 2010, Doc. 229.)

[2] The Court subsequently denied Plaintiff's Motion to Reconsider (Doc. 200) the earlier determination on the choice of law. (See Order, Doc. 218.)

formalities, pay their own expenses, elect their own officers and directors, and maintain completely separate financial accounting.

Plaintiff paints a different picture. She asserts that the only function of Defendants' business structure is to shield the actual wrongdoers from tort liability for the wrongful denial of valid insurance claims. She claims that Citizens is the alter ego of all of its subsidiaries and that Citizens and its founder, Harold Riley, has ultimate and absolute control over all of Citizens' subsidiaries. Plaintiff asserts that Citizens, CICA, and National collectively do business as the "Citizens, Inc. Financial Group," and that Citizens is the only one of the three that has any employees. Plaintiff contends that Defendants denied her valid claims because Combined Underwriters' book of business was not sufficiently profitable. National then entered into the co-insurance agreement with TILIC, which Plaintiff claims was an undercapitalized business that was never licensed as an Oklahoma insurance company.

## II. Analysis

### A. Standard of Review

Summary judgment is proper only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *e.g., Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008). The party seeking to overcome a motion for summary judgment must make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33, 106 S.Ct. 2548, 2553 (1986). Although the Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party, the non-moving party must "identify sufficient evidence requiring submission

to the jury. . . . She cannot avoid summary judgment merely by presenting scintilla of evidence to support her claim; she must proffer facts such that a reasonable jury could find in her favor." *Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009) (citations omitted).

### B.      Piercing the Corporate Veil

The general rule is that a parent corporation is not liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Anderson v. Abbott*, 321 U.S. 349, 362 (1994) ("Limited liability is the rule, not the exception"). "But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Bestfoods*, 524 U.S. at 61 (citations omitted). As mentioned above, the Court has already determined that Texas law applies to the issue of whether Plaintiff may pierce National's corporate veil and Colorado law applies to the issue of whether Plaintiff may pierce Citizens' or CICA's corporate veil. (*See* Opinion and Order, Doc. 198.) Under Colorado and Texas law, the burden of proving that the corporate veil of a defendant should be pierced – be it under a theory of agency, alter ego, or general equitable principles — is on the plaintiff to demonstrate specific facts to satisfy all legal prerequisites to the extraordinary remedy that he or she seeks. *See In re Air Crash Disaster,* 720 F.Supp. 1467, 1484 (D. Colo. 1989); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W. 3d 789, 798 (Tex. 2002).

#### 1. National

Under common law in Texas,  the a corporate veil is pierced: (1) when a corporation is an alter ego of its owners or shareholders; (2) when a corporation is used for an illegal purpose, and (3)

when a corporation is used as a sham to perpetrate a fraud. *S.E.C. v. Resource Development Intern., LLC*, 487 F.3d 295, 302 (5th Cir. 2007). Doctrines that support piercing the corporate veil do not create substantive causes of action; instead, piercing the corporate veil is considered remedial as it "merely expands the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability." *In re Texas American Exp., Inc.*, 190 S.W.3d 720, 725-26 (Tex. App. 2005).

The Texas Supreme Court has stated that "the limitation on liability afforded by the corporate structure can be ignored only 'when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.'" *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)). This could occur, for example, "when the corporate structure has been abused to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong." *Id.*; *see Carlson Mfg., Inc. v. Smith*, 179 S.W.3d 688, 694 (Tex. App. 2005). This approach to the imposition of veil-piercing liability is now further limited by the statute discussed below. *Id.*

Section 21.223 of the Texas Business Organizations Code takes a strict approach to disregarding the corporate structure. The statute provides, in relevant part:

> (a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber of the corporation, may not be held liable to the corporation or its obligees with respect to:
>
> * * *
>
> (2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the

5

> basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory;
>
> * * *
>
> (b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

Tex. Bus. Orgs. Code Ann. §21.223 (Vernon 2006); *see, e.g., Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006). Allegations and evidence of *actual* fraud are necessary, or "vital," to pierce the corporate veil under §21.223. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007). "Actual fraud," as used in §21.223(b) is conduct that "involves dishonesty of purpose or intent to deceive." *See Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 387 (Tex. App. 2007) (citation omitted).

Plaintiff did not allege in the Amended Complaint and does not argue in her response brief that Citizens or CICA caused National to be used for the purpose of perpetrating and did perpetrate an actual fraud on Plaintiff primarily for the direct personal benefit of Citizens or CICA. In her response brief, she merely states that Citizens "wholly controlled its subsidiaries," breached its duty to Plaintiff, and "reaped the benefits from its own improper activities." (Resp. Br., Doc. 112, at 28.) The allegations are not evidence of actual fraud, and without such evidence, Plaintiff cannot pierce National's corporate veil to impose liability on Citizens or CICA.

### 2.     Citizens and CICA

Plaintiff argues that the Court can also pierce the corporate veils of Citizens and CICA to hold them liable for the denial of benefits to her. Yet, if National denied the benefits, this argument is confusing because the objective in piercing the corporate veil is generally to hold a parent

corporation, owner, shareholder, officer or director liable for the actions of a subsidiary; it is not to hold the subsidiary liable for the acts of the parent, owner, shareholder, officer or director. It is National's veil to pierce – not CICA's or Citizens' veil. Therefore, to prevail on her argument that the Court should pierce the corporate veil of CICA or Citizens, Plaintiff must show that one of these entities, and not National, caused the harm of which she complains. Presumably, Plaintiff's motivation for piercing the corporate veil of CICA is to reach Citizens, and her motivation for piercing the corporate veil of Citizens is to reach Citizens' sole shareholder and owner, Harold Riley.

### a.     "Special Relationship"

Plaintiff does not approach the analysis of veil-piercing in this manner but argues, in the alternative, that Defendants are liable for breaching the duty of good faith and fair dealing even if the Court or jury declines to pierce the corporate veils of Citizens, CICA, or National.[3] First, she asserts that National was her insurer and is liable for its own acts and omissions resulting in the denial of her claims. Defendants deny any wrongdoing by National, but they do not dispute that National is a proper party and would be liable if Plaintiff proves that it directly committed the alleged wrongs. Defendants do dispute Plaintiffs second argument, that Citizens is also liable for its own acts and omissions resulting in the denial of her claims. They contend that, if Citizens and CICA have any liability, it can only be derivative, not direct.[4]

---

[3]Plaintiff does not argue that Citizens or CICA can be held liable for breach of contract against her.

[4]Other than her argument that CICA is liable if the corporate veil of National is pierced, Plaintiff does not argue that CICA committed any act or omission resulting in the denial of her claims.

Plaintiff's second argument is based on her assertion that Citizens assumed a contractual duty to provide the employees and services to operate National and that it had a direct financial motive for denying her claims. Plaintiff relies on *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793 (10th Cir. 1995) for the proposition that "a bad faith claim will lie against an entity that did not issue the insurance policy so long as that entity: (1) assumes the responsibility for handling claims that arise from the policy; and (2) carries actual financial risk in connection with the payment of claims." (Resp. Br., Doc. 112, at 17.)

Applying Oklahoma law, the *Wolf* court considered whether an insurance plan administrator for a self-insured health plan could be subject to the duty of good faith. The court stated: "We believe the analysis should focus [ ] on the factual question of whether the administrator acts like an insurer such that there is a 'special relationship' between the administrator and insured that could give rise to a duty of good faith. *Id.* at 797 (citation omitted). The court noted that one of the primary obligations of the administrator was to assume the "ordinary insurer role of investigating and servicing claims," and the administrator and the insurer had a profit and loss sharing arrangement contingent on the approval or denial of claims. *Id.* at 797-98. The *Wolf* court held that the plan administrator could be subject to the duty of good faith because it had primary control over benefit determinations and assumed some of the risk of those determinations. *Id.* at 798. The court reasoned that the plan administrator had the "power, motive and opportunity to act unscrupulously." *Id.*

Plaintiff also cites to *Wathor v. Mut. Assurance Administrators*, 87 P.3d 559 (2004), where the Oklahoma Supreme Court agreed with the analysis set forth in *Wolf* but concluded that the third-party administrator in that case was not subject to the duty of good faith. The *Wathor* court found

that the third-party administrator performed some of the tasks of an insurer in its claims handling process but its compensation package was not tied to the approval or denial of claims, as in *Wolf*. *Wathor*, 87 P.3d at 563. Instead, the *Wathor* third-party administrator charged a flat fee based on the number of participants. *Id.*

Plaintiff admits that Citizens is not a third-party administrator, but she argues that Citizens' role was "far greater than an ordinary claims administrator," because Citizens provided employees to perform services for National in accordance with the terms of a Service Agreement ("Agreement") executed in 2002.[5] (Mot. Summ. J., Doc. 82, Ex. 17.) The Agreement indicates that Citizens will provide National with "certain insurance administrative functions, data processing systems, daily operational services, management consulting, and marketing development, . . ." (*Id.* at 1.) Listed among the services Citizens agreed to provide is the "policyowner service." (*Id.* ¶1.) The Agreement states that it "does not create an agency relationship and shall not be deemed or considered a joint venture or partnership." (*Id.*, ¶ 5.) Citizens is to be deemed an "independent contractor." (*Id.*)

Shortly after the Agreement was executed, Combined Underwriters notified Plaintiff that it had entered into a service agreement with Citizens "to provide administration and service for your insurance policy" and Combined Underwriters represented that Citizens will "provide a personal response to most of your inquiries" when an insured calls. In particular, the letter represents that "[s]ervice representatives have the ability to provide benefit information, billing information and

---

[5] National entered into the coinsurance or reinsurance agreement with TILIC in December of 2004, and Plaintiff represents in her response brief to a motion for summary judgment filed by AIM that TILIC administered the Policy thereafter. (*See* Resp. Br., Doc 196, at 6, 11-12.)

claims assistance when you call." (Resp. Br., Doc. 112, Ex. 24.) The same day, Citizens notified Plaintiff that it would be servicing her policy from its Austin, Texas office. The letter provided her with phone numbers, addresses, and email addresses to contact Citizens representatives in relation to her policy. It also informs the policy owner that premiums paid by mail are to be sent to the Austin Service Office. (*Id.*, Ex. 25.)

Thus, there is language in the Agreement and in the notices sent to Plaintiff which could lead to the conclusion that Citizens acted in an administrative role, although Citizens cannot be deemed a third-party administrator under Oklahoma law. *See* 36 Okla. Stat. §1442 (2001). The Agreement does not expressly obligate Citizens to investigate and service claims. Instead, it appears to obligate Citizens' employees, acting on behalf of National, to assume the role of investigating and servicing claims. This unusual arrangement, coupled with the notices, could present a genuine issue of material fact as to whether Citizens had primary control over benefit determinations. Nonetheless, Plaintiff has not shown that a question of fact exists with regard to the second basis for the *Wolf* holding, *i.e.*, that Citizens assumed some of the risk of the benefit determinations. 50 F.3d at 798.

Under the terms of the Agreement, National reimburses Citizens for all expenses that are related to National and pays a management fee which accounts for the salaries of the employees provided by Citizens under the Agreement. (Mot. Summ. J., National Financial Exam., Ex. 6, at 3; Agreement, Exs. 17, ¶ 4.) However, Citizens does not pay any expenses related to claims. (*Id.*, Agreements, Exs. 17, ¶ 1(c).) CICA and National have paid all expenses and management fees required by the Agreements and have remained responsible for their own direct expenses. (*Id.*, Riley Dep. Ex. 2, 28:1-6, 11-13.) Like the administrator in *Wathor*, Citizens' employees performed some of the tasks of an insurer in its claims handling process but Citizens' compensation package was not

tied to the approval or denial of the claims its serviced. Plaintiff argues that Citizens had the motive to act unscrupulously because "[a]ny profits or losses from those claims would flow to the top of the Citizens, Inc. Financial Group," (Resp. Br., Doc. 112, at 19), but she does not show how. There is no a 'special relationship' between Citizens and Plaintiff that could give rise to a duty of good faith. *See Wolf*, 50 F.3d at 797.

### b. Colorado Law

Even if there were a special relationship, Plaintiff could not pierce the corporate veil of Citizens to reach its shareholder, officers or directors under Colorado law. The Court has ruled that Colorado law applies to the issue of whether Plaintiff may pierce Citizens' or CICA's corporate veil. (See Opinion and Order, Doc. 198.) To determine whether it is appropriate to pierce the corporate veil under Colorado law, a court must make a three-part inquiry. *McCallum Family L.L.C. v. Winger,* 221 P.3d 69, 74 (Colo. Ct. App. 2009) (citing *In re Phillips*, 139 P.3d 639, 644 (Colo. 2006); *Micciche v. Billings*, 727 P.2d 367, 372-73 (Colo. 1986)). "First, the court must determine whether the corporate entity is the 'alter ego' of the person or entity in issue." *Id.* (citations omitted). Like courts in other states, courts in Colorado

> consider a variety of factors in determining status as an alter ego, including whether (1) the corporation is operated as a distinct business entity; (2) funds and assets are commingled; (3) adequate corporate records are maintained; (4) the nature and form of the entity's ownership and control facilitate misuse by an insider; (5) the business is thinly capitalized; (6) the corporation is used as a "mere shell"; (7) legal formalities are disregarded; and (8) corporate funds or assets are used for noncorporate purposes.

*Id.* (citing *Phillips*, 139 P.3d at 644; *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003).)

"Second, the court must determine whether justice requires recognizing the substance of the relationship between the person or entity sought to be held liable and the corporation over the form

because the corporate fiction was 'used to perpetrate a fraud or defeat a rightful claim.'" *Id.* (citations omitted). "Third, the court must consider whether an equitable result will be achieved by disregarding the corporate form and holding a shareholder or other insider personally liable for the acts of the business entity." *Id.* (citations omitted). "All three prongs of the analysis must be satisfied." *Id.*

The parties have presented considerable evidence of the factors relevant to whether Citizens or CICA are the alter ego of National, or that National is the alter ego of Citizens or CICA, but they have presented almost no evidence or argument as to whether Citizens is the alter ego of Harold Riley or any officer or director of Citizens. From the limited facts presented, it appears that the facts favor Defendants' position that Citizens is not the alter ego of any shareholder, officer or director. Nonetheless, even if the Court were to find that the first prong of the three-part inquiry had been met, there is no evidence indicating that Citizens was used to "perpetrate a fraud or defeat a rightful claim."

Plaintiff does not dispute that Defendants are adequately capitalized for insurance claim purposes, and the mere possibility that a plaintiff may be unable to enforce a judgment against a tortfeasor is not grounds to justify piercing the corporate veil. *See Yoder v. Honeywill, Inc.*, 104 F.3d 1215, 1222 (10th Cir. 1997); *Boughton v. Cotter Corp.*, 65 F.3d 823, 836 (10th Cir. 1995). Plaintiff has not shown, for example, that "adherence to the corporate form would prevent or frustrate [her] ability to recover from a corporate tortfeasor . . . [or that it] would promote injustice by permitting a culpable party to avoid liability simply by raising the corporate form." *In re Air Crash Disaster,* 720 F.Supp. 1467, 1484 (D. Colo. 1989). Since the second prong of the three-party

inquiry has not been satisfied, Plaintiff cannot pierce Citizens' corporate veil under Colorado law to hold Citizens' shareholder, officers or directors liable for any breach of the duty of good faith.

**C.     Agency**

Since Citizens is not liable for its own acts and omissions resulting in the denial of her claims, and Plaintiff cannot pierce the corporate veil under Colorado law, the Court turns to Plaintiff's argument that Citizens, CICA and National "are all jointly and severally liable for the bad faith claim denials, because they were each other's agents." (Resp. Br., Doc. 112, at 19.) In support, she relies on *Oliver v. Farmers Ins. Group of Cos.*, 941 P.2d 985 (Okla. 1997). This reliance is misplaced. The *Oliver* plaintiff asserted a bad faith insurance claim against four defendants alleged to be members of the same insurance group. The plaintiff had evidentiary materials showing that the group was comprised of property and casualty insurers operating under a common management, subject to a pooling agreement for premiums, expenses and losses, and the "economic reality" was that the group was "but one entity" supervised and managed by one of the group members, "Farmers Group, Inc." *Id.* at 986. Farmers Group, Inc. argued, among other things, that it was only a management company, had no contractual relations with the insured, and could not be held liable for bad faith. *Id.* The trial court agreed and granted summary judgment in the company's favor.

The Oklahoma Supreme Court reversed the trial court based upon the analysis applicable in Oklahoma for piercing the corporate veil. The court stated: "If one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one for the purpose of tort law. *Frazier v. Bryan Mem'l Hosp. Auth.*, 775 P.2d 281, 288 (Okla. 1989); *Tara Petroleum Corp. v. Hughey*, 630 P.2d 1269, 1275 (Okla. 1981). The question hinges primarily on control." *Oliver*, 941 P.2d at 987. The court recited the ten *Frazier* factors that

may be considered to determine if the corporate entity may be disregarded as well as Frazier's emphasis on the commonality of purpose between the corporations. The court found that the issues posed by *Frazier* were questions for the finder of fact. *Id.*

Plaintiff reads *Oliver* to imply that companies can be vicariously liable for each other's torts under an agency theory and, in particular, that liability for bad faith may lie against Defendants under such theory. In so doing, she would have the Court use the factors articulated in *Frazier*, an Oklahoma case addressing veil-piercing issues, to determine whether the Defendants were agents of each other. Plaintiff fails to take into account that the *Oliver* court did not discuss agency theory as an alternative means to veil-piercing for holding one company liable for the actions of another. Instead, the *Oliver* court recited the classic means of disregarding the corporate entity to hold that companies of an unincorporated association could be vicariously liable for each others' torts. If the Court were to apply *Oliver* as a means of holding Defendants liable on an agency theory, it would have to essentially circumvent its prior choice-of-law ruling that Oklahoma law does not apply to issues of piercing the corporate veil in this case. Oklahoma law does not apply because Defendants were incorporated in Colorado and Texas, not Oklahoma. *Oliver* is inapposite, and Defendants cannot be deemed jointly and severally liable as agents of each other for the alleged bad faith claim denials.

**III.   Conclusion**

For the reasons stated herein, the Motion for Summary Judgment (Doc. 82) filed by Defendants Citizens, Inc., CICA, and National, is hereby GRANTED.

**ORDERED** this 13th day of April, 2010.

_____
**TERENCE KERN
UNITED STATES DISTRICT JUDGE**