**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **TERRI TOMLINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 08-CV-259-TCK (FHM)** |
| | ) | |
| | ) | |
| **COMBINED UNDERWRITERS LIFE INSURANCE COMPANY, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Now before the Court is the Motion for Summary Judgment (Doc. 192) filed by Defendant Austin Insurance Management, Inc. ("AIM").

## I. Background

This matter involves a dispute concerning claims submitted by and benefits payable to Plaintiff Terri Tomlinson ("Plaintiff") under a Cancer and Dread Disease Insurance Policy ("the Policy"). In 1991, Combined Underwriters Life Insurance Company ("Combined Underwriters") issued the Policy, under which Plaintiff was also an insured. Citizens purchased Combined Underwriters in 2002, and gave the stock of Combined Underwriters to CICA, a subsidiary of Citizens. CICA designated Combined Underwriters to be its subsidiary and changed Combined Underwriters' name to National in 2004. National and Texas International Life Insurance Company ("TILIC") entered into a "Coinsurance Reinsurance Agreement" in December of 2004 whereby TILIC assumed the role of a co-insurer and reinsurer for a group of insurance policies that included the Policy at issue here. AIM is the parent corporation of TILIC.

Plaintiff's remaining claims are for breach of contract and bad faith.[1] Her attempt to impose liability against all of the defendants, including the parent corporations of Combined Underwriters and TILIC, is found in the following paragraph of the Amended Complaint:

> Plaintiff alleges that the relationship among the Defendants is merely a corporate sham and illusion, and one or more of the Defendants is merely the agent, adjunct, and alter ego of one or more of the remaining Defendants. By virtue of the overwhelming control exerted over the other entities, the separate corporate veils of the entities should be pierced and disregarded for purposes of this litigation. Defendants should be treated as one entity for purposes of liability in this action, and all should be held liable for the contractual obligations and torts of their alter egos.

(Doc. 161, at 2.) During the briefing period on this motion, the Court granted the Motion for Choice of Law Determination (Doc. 31) filed by Citizens, CICA and National, and found that the law of each Defendant's state of incorporation applies to issues of piercing the corporate veil. (See Order, Doc. 198.)[2] AIM is incorporated in Texas. After the briefing period had passed on the instant motion, the Court granted AIM's Motion to Dismiss Bad Faith Claim Only (Doc. 170) based on the Court's finding that Plaintiff's bad faith claim against AIM was barred by the applicable two-year statute of limitations. (Order, Doc. 207, filed Sept. 9, 2009.)

AIM argues that it is not a party to the insurance contract upon which Plaintiff maintains this suit, and it played no role in the administration of the policy. Aim asserts that, since no privity of contract exists between Plaintiff and AIM, Plaintiff's direct cause of action against AIM for breach of contract is legally unsupportable. Further, according to AIM, Plaintiff's claim that AIM is the

---

[1] The Court denied a motion for summary judgment filed by AIM's co-defendants on these claims. (See Order, filed April 9, 2010, Doc. 229.)

[2] The Court subsequently denied Plaintiff's Motion to Reconsider (Doc. 200) the earlier determination on the choice of law. (See Order, Doc. 218.)

alter ego of TILIC is factually unsupportable and Plaintiff fails to allege or present evidence of fraud committed by AIM through TILIC.

Plaintiff argues that all of the Defendants are related and interconnected. Indeed, she claims they are "but a single entity." (Resp. Br., Doc. 196, at 2.) She maintains that "Defendants have structured themselves to require the least amount of overhead . . . and the most amount of available capital to satisfy the regulatory authorities and at least give the appearance of a flush insurance business." (*Id.*) As to AIM, in particular, she asserts that it was formed to loan money to "grossly undercapitalized" TILIC. (*Id.*) Plaintiff argues that her claims are not dependent on contractual privity as they are based on (1) the "special relationship" assumed by AIM in its dealing with TILIC, (2) agency liability, and (3) "alter ego/corporate veil piercing" liability. (*Id.* at 7.)

## II. Analysis

### A. Standard of Review

Summary judgment is proper only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *e.g., Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008). The party seeking to overcome a motion for summary judgment must make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33, 106 S.Ct. 2548, 2553 (1986). Although the Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party, the non-moving party must "identify sufficient evidence requiring submission to the jury. . . . She cannot avoid summary judgment merely by presenting scintilla of evidence to

support her claim; she must proffer facts such that a reasonable jury could find in her favor." *Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009) (citations omitted).

Plaintiff admits that she is not in any contractual privity with AIM. She claims no third-party beneficiary status of any agreement between AIM and TILIC. Consequently, AIM is entitled to summary judgment on Plaintiff's breach of contract claims. She bases her remaining bad faith claim against AIM on three theories of liability.

**B. "Special Relationship"**

First, Plaintiff argues that AIM assumed a special relationship in its dealings with TILIC such that it can be held liable for the bad faith denial of her claims. Plaintiff relies on *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793 (10th Cir. 1995) for the proposition that "bad faith may be imposed on an entity that did not issue the insurance policy so long as that entity: (1) assumes the responsibility for handling claims that arise from the policy; and (2) carries actual financial risk in connection with the payment of claims." (Resp. Br., Doc. 196, at 7.) Applying Oklahoma law, the *Wolf* court considered whether an insurance plan administrator for a self-insured health plan could be subject to the duty of good faith. The court stated: "We believe the analysis should focus [ ] on the factual question of whether the administrator acts like an insurer such that there is a 'special relationship' between the administrator and insured that could give rise to a duty of good faith. *Id.* at 797 (citation omitted).

The *Wolf* court noted that one of the primary obligations of the administrator was to assume the "ordinary insurer role of investigating and servicing claims," and the administrator and the insurer had a profit and loss sharing arrangement contingent on the approval or denial of claims. *Id.* at 797-98. The *Wolf* court held that the plan administrator could be subject to the duty of good faith

because it had primary control over benefit determinations and assumed some of the risk of those determinations. *Id.* at 798. The court reasoned that the plan administrator had the "power, motive and opportunity to act unscrupulously." *Id.*

In *Wathor v. Mut. Assurance Administrators*, 87 P.3d 559 (2004), the Oklahoma Supreme Court agreed with the analysis set forth in *Wolf* but concluded that the third-party administrator in that case was not subject to the duty of good faith. The *Wathor* court found that the third-party administrator performed some of the tasks of an insurer in its claims handling process but its compensation package was not tied to the approval or denial of claims, as in *Wolf*. *Wathor*, 87 P.3d at 563. Instead, the *Wathor* third-party administrator charged a flat fee based on the number of participants. *Id.*

Plaintiff does not argue that AIM acted as a third-party administrator of the Policy or otherwise assumed any responsibility for handling claims that arise for the Policy. She does assert that an individual who was involved in the handling of her claim was employed by AIM. (Resp. Br., Doc. 196, at 8.) However, as AIM points out, Plaintiff does not provide the identity of the employee or otherwise provide factual support for her assertion. Larry Doze is the president, CEO and chairman of the board of directors of TILIC. He is also a director, president, CEO, and sole shareholder of AIM. He testified that AIM has no employees. Plaintiff provides some evidence that Doze and TILIC employees may have been involved in some claims decisions, but this is not evidence that AIM assumed the "ordinary insurer role of investigating and servicing claims" or otherwise had primary control over benefit determinations.

Plaintiff attempts to show that AIM assumed some of the risk of benefit determinations under the Policy based on a loan by AIM to TILIC in 2005 of eight million dollars ($8,000,000.00). She

points to the possibility that AIM might not be repaid if claims are paid in such an amount that TILIC's capital and surplus reserve drops below that is required by the Texas Department of Insurance ("TDI"). Defendants point out that the loan was approved by TDI, which dictates TILIC's capital and surplus reserve requirements. Defendants contend that AIM carries no financial risk regarding the administration of insurance claims. AIM's financial risk, they argue, arises only by virtue of its ownership of Defendant TILIC's equity.

AIM's risk of not getting repaid on its loan to TILIC is completely different from the risk presented by the profit and loss sharing arrangement in *Wolf*. Repayment of the loan has no direct correlation to payment for claims handling services. It is not contingent on the approval or denial of claims in this case. The mere possibility that TILIC might someday lose the ability to repay the loan because it pays out too much on claims is rank speculation."Inferences supported by conjecture or speculation will not defeat a motion for summary judgment." *Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006) (citing *Phillips v. Calhoun*, 956 F.2d 949 n. 3 (10th Cir. 1992)). As AIM asserts, Plaintiff's "attempt to shoe horn the analytical framework of *Wolf* and *Wathor* into the case at bar is misplaced." (Reply Br., Doc. 201, at 7.) AIM does not have the "power, motive and opportunity to act unscrupulously." *Wolf*, 50 F.3d at 798. There is no "special relationship" between AIM and Plaintiff that could give rise to a duty of good faith. *See id.* at 797.

**C. Agency**

Plaintiff second argument is that derivative liability may be imposed on AIM for TILIC's conduct under an agency theory. In support, she relies on *Oliver v. Farmers Ins. Group of Cos.*, 941 P.2d 985 (Okla. 1997). This reliance is misplaced. The *Oliver* plaintiff asserted a bad faith insurance claim against four defendants alleged to be members of the same insurance group. The

plaintiff had evidentiary materials showing that the group was comprised of property and casualty insurers operating under a common management, subject to a pooling agreement for premiums, expenses and losses, and the "economic reality" was that the group was "but one entity" supervised and managed by one of the group members, "Farmers Group, Inc." *Id.* at 986. Farmers Group, Inc. argued, among other things, that it was only a management company, had no contractual relations with the insured, and could not be held liable for bad faith. *Id.* The trial court agreed and granted summary judgment in the company's favor.

The Oklahoma Supreme Court reversed the trial court based upon the analysis applicable in Oklahoma for piercing the corporate veil. The court stated: "If one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one for the purpose of tort law. *Frazier v. Bryan Mem'l Hosp. Auth.*, 775 P.2d 281, 288 (Okla. 1989); *Tara Petroleum Corp. v. Hughey*, 630 P.2d 1269, 1275 (Okla. 1981). The question hinges primarily on control." *Oliver,* 941 P.2d at 987. The court recited the ten *Frazier* factors that may be considered to determine if the corporate entity may be disregarded as well as the *Frazier* court's emphasis on the commonality of purpose between the corporations. The court found that the issues posed by *Frazier* were questions for the finder of fact. *Id.*

Plaintiff reads *Oliver* to imply that AIM can be vicariously liable for TILIC's bad faith tort. In so doing, she would have the Court apply the factors articulated in *Frazier*, an Oklahoma case addressing veil-piercing issues. Plaintiff fails to take into account that the *Oliver* court did not discuss agency theory as an alternative means to veil-piercing for holding one company liable for the actions of another. Instead, the *Oliver* court recited the classic means of disregarding the corporate entity to hold that companies of an unincorporated association could be vicariously liable

for each others' torts. If the Court were to apply *Oliver* as a means of holding AIM liable on an agency theory, it would have to essentially circumvent its prior choice-of-law ruling that Oklahoma law does not apply to issues of piercing the corporate veil in this case. Oklahoma law does not apply because AIM was incorporated in Texas, not Oklahoma. *Oliver* is inapposite, and AIM cannot be deemed vicariously liable, under an agency theory, for the alleged bad faith claim denials by TILIC.

**D. Piercing the Corporate Veil**

Plaintiff's third theory of liability is based on an effort to "pierce the corporate veil" of TILIC so that AIM can be held liable for bad faith in denying Plaintiff's claims. The general rule is that a parent corporation is not liable for the acts of its subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *Anderson v. Abbott*, 321 U.S. 349, 362 (1994) ("Limited liability is the rule, not the exception"). "But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Bestfoods*, 524 U.S. at 61 (citations omitted). As mentioned above, the Court has already determined that Texas law applies to the issue of whether Plaintiff may pierce TILIC's corporate veil. (*See* Opinion and Order, Doc. 198.) Under Texas law, the burden of proving that the corporate veil of a defendant should be pierced is on the plaintiff to demonstrate specific facts to satisfy all legal prerequisites to the extraordinary remedy that he or she seeks. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W. 3d 789, 798-99 (Tex. 2002).

Under common law in Texas, the a corporate veil is pierced: (1) when a corporation is an alter ego of its owners or shareholders; (2) when a corporation is used for an illegal purpose, and (3)

when a corporation is used as a sham to perpetrate a fraud. *S.E.C. v. Resource Development Intern.*, LLC, 487 F.3d 295, 302 (5th Cir. 2007). Doctrines that support piercing the corporate veil do not create substantive causes of action; instead, piercing the corporate veil is considered remedial and it "merely expands the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability." *In re Texas American Exp., Inc.*, 190 S.W.3d 720, 725-26 (Tex. App. 2005).

The Texas Supreme Court has stated that "the limitation on liability afforded by the corporate structure can be ignored only 'when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.'" *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008)(quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)). This could occur, for example, "when the corporate structure has been abused to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong." *Id.*; *see Carlson Mfg., Inc. v. Smith*, 179 S.W.3d 688, 694 (Tex. App. 2005). This approach to the imposition of veil-piercing liability is now further limited by the statute discussed below. *Id.*

Section 21.223 of the Texas Business Organizations Code takes a strict approach to disregarding the corporate structure. The statute provides, in relevant part:

> (a) A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber of the corporation, may not be held liable to the corporation or its obligees with respect to:
>
> * * *
>
> > (2) any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the

> basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory;
>
> * * *
>
> (b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

Tex. Bus. Orgs. Code Ann. §21.223 (Vernon 2006); *see, e.g., Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006). Allegations and evidence of actual fraud are necessary, or "vital," to pierce the corporate veil under §21.223. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007). "Actual fraud," as used in §21.223(b) is conduct that "involves dishonesty of purpose or intent to deceive." *See Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 387 (Tex. App. 2007) (citation omitted).

Plaintiff did not allege in the Amended Complaint and does not argue in her response brief that AIM caused TILIC to be used for the purpose of perpetrating and did perpetrate an actual fraud on Plaintiff primarily for the direct personal benefit of AIM. In her response brief, she argues, based on Oklahoma law, that TILIC's veil may be pierced to hold AIM liable for the bad faith denial of her claims. (Resp. Br., Doc. 196, at 9-12.) Oklahoma law does not require allegations or evidence of fraudulent intent to pierce the corporate veil. *See Pennmark Res. Co., v. Oklahoma Corp. Comm'n*, 6 P.3d 1076, 1081 (Okla. Civ. App. 2000). She suggests, however, that fraud may be implied because TILIC existed and functioned as the administrator of the Policy "only by virtue of the capital infusion from AIM." Resp. Br., Doc. 196, at 11-12. She also asks the Court to infer the existence of fraud due to facts indicating that AIM and TILIC exist in the same office, use the same personnel, share equipment, have one common director and are under the control of the same person.

The Court finds that Plaintiff has failed to make a showing sufficient to establish the existence of actual fraud, an element essential to her veil-piercing claims. Texas law requires actual fraud, and Texas law controls. Plaintiff cannot pierce TILIC's corporate veil to impose liability on AIM.

## III. Conclusion

For the reasons stated herein, the Motion for Summary Judgment (Doc. 192) filed by Defendant Austin Insurance Management, Inc. ("AIM") is hereby GRANTED.

**ORDERED this 13th day of April, 2010.**

Terence C Kern

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**